## AVNET v. HULL.

### No. 14766.

Court of Civil Appeals of Texas.

Dallas.

Feb. 12, 1954.

Rehearing Denied March 12, 1954.

Clark, Coon, Holt & Fisher, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, Pinkney Grissom and David M. Kendall, Jr., Dallas, for appellee.

CRAMER, Justice.

This is an appeal by the plaintiff in an automobile collision case, Hull's car having run into the rear of Avnet's car at the intersection of Zangs Boulevard and Illinois Avenue in the City of Dallas, after Avnet's car had stopped for an intersection signal light, just before noon, July 3, 1949.

On a jury trial the special issues were found, material here, in substance as follows: (1–2) Hull failed to keep a proper lookout which proximately caused the collision; (3, 4, 5) Hull did not fail to have his car under proper control just before the collision; (6, 6a, 6b) Hull at the time and on the occasion in question was not driving at a speed in excess of 30 miles per hour; (7, 8, 9) Hull did not fail to slow down as he approached the intersection; (10, 11) Avnet failed to keep a proper lookout which was a proximate cause of the collision; (12, 13, 14) Avnet stopped his automobile suddenly just before the collision which was negligence and a proximate cause of the collision; (15, 16, 17) Avnet failed to signal his intention to stop which was negligence and a proximate cause of the collision; (18) the collision was not the result of an unavoidable accident; (19) found "None" to the issue as to compensation to Avnet for diminished earning capacity and for physical pain and mental anguish as a result of the collision; (20) found $25 for doctors and medical expense; (21, 22) found the value of his automobile $975 before, and $925 after the collision.

On the verdict the district judge rendered judgment that Avnet take nothing and that Hull and his insurer be discharged with their costs. Avnet has duly perfected this appeal from that judgment and here briefs five points, in substance: Error of the trial court in, (1) receiving and adopting the answers of the jury "that were contrary to the undisputed and un-

controverted testimony of the disinterested witnesses;" (2) in receiving from the jury and adopting answers to special issues that were contrary to the overwhelming preponderance of the evidence; (3) "* * refusing to grant a new trial when it was patent from the answers made by the jury to special issues that the jury was guilty of misconduct and had rendered a general verdict against plaintiff dictated by prejudice, partiality, and passion." (4) "* * in receiving from the jury and adopting answers to special issues and in refusing to grant a new trial when defendant's lawyer was guilty of conduct at the trial calculated to arouse the religious prejudices of the jury." And (5) that the verdict "was so contrary to the overwhelming weight of all the evidence as to be clearly unfair and unjust. * * *."

■ We have examined the record and find no support in the motion for new trial or by proper assignments for Avnet's third and fourth points. We therefore cannot consider the same.

Avnet's points 1, 2, and 5 raised but one question, to wit: That the jury's findings are contrary to the (a) undisputed, or (b) great weight of the evidence.

Our examination of the record leads us to the conclusion the record shows Hull and Avnet both testified in person, and three additional witnesses testified for Avnet on the question as to how the accident occurred. Appellee Hull in substance on that question testified he had an unobstructed view of the intersection and the traffic light for several hundred yards before the collision, and that the signal did not start to change until he got within 30 feet of the intersection. He stated that Avnet was traveling slowly and that he came to a complete stop when the light was turning amber. Hull was driving his automobile approximately 100 yards behind Avnet. He stated that Avnet gave no signal of his intention to stop. Two hundred yards from the intersection, he estimated his speed at 50 miles per hour, but estimated his speed at time of the collision at 15 miles per hour, though he made no

effort to slow his car down until Avnet stopped in front of him because he thought he would be able to go through the light without slowing down. He stated that Avnet came to a sudden stop and he thought Avnet was going on through the light, which he intended to do as well. He believed he had plenty of time to go through the light before it changed to red. He estimated his distance from Avnet as being 60 feet at the time Avnet stopped his car. He stated there was plenty of room to pass Avnet on either the right or left, as the highway is six lanes, but that when Avnet suddenly stopped he was unable to do either. He testified that Avnet's car just barely crossed the intersection as a result of the collision. Hull testified that he was unable to drive his car away from the scene of the accident and that it took about a week to repair it. He said he was given a traffic ticket for negligent collision.

The three witnesses other than the parties to the suit with reference to how the accident occurred testified, in substance, as follows: Witness E. F. Magee testified that he stopped his car at the intersection just moments before the accident; he was on Illinois Street facing east; he had a close, unobstructed view of the intersection; when he first looked north on Zangs Boulevard, he could see both Avnet's and Hull's cars coming south. He estimated Hull's car to be traveling at 45 or 50 miles per hour, approximately 100 yards to the rear of Avnet's car; that Avnet came to a full stop at the intersection, and that Avnet could not have crossed the intersection without running a red light because the light facing Avnet had changed from green to amber to red before Avnet reached the intersection. Magee fixed to cross the intersection when his light turned green, but upon seeing Hull's car still coming he realized Hull would be unable to stop. Had he pulled out, Avnet's car would have been knocked into his, according to his testimony. He stated the light facing Hull and Avnet was red when Hull approached the intersection and when the collision occurred. He estimated Avnet's car to have been knocked 190 feet.

Witness R. C. Magee, brother of E. F., testified that Avnet's light was red when he (Avnet) stopped his car at the intersection and was still red at the time of the collision. He estimated Avnet's car was knocked 125 feet by the impact.

H. L. Parsons, an off-duty policeman, testified he was driving south on Zangs Boulevard at time of the collision; Hull's car had passed him about two blocks away from the intersection of Zangs and Illinois, at which time Hull was traveling at about 40 miles per hour. Parsons' automobile was traveling at about 20 miles per hour at the time. His car was approximately 500 feet north of the intersection facing south when the collision took place. He testified that the light was red for traffic proceeding south (the direction of both cars concerned) on Zangs at the time of the collision.

Officer Harris, who investigated the accident for the Police Department, testified in substance that he had very little personal recollection of the accident, but on refreshing his memory from a photostatic copy of his accident report, he recalled that Hull was given a traffic ticket for negligent collision. Avnet was given no ticket. The officer's report did not show whether there were skid marks at the scene of the accident or how far Avnet's car was knocked.

Avnet himself testified in substance that he was proceeding in a southerly direction on Zangs Boulevard; that he began to slow down about 200 feet from the intersection; that he gave an arm signal; that Hull was 300 or 400 feet behind him when the light first turned amber; he believed the light turned red a couple of seconds before he reached the intersection. He stated that Hull was going around 45 or 50 miles an hour at the time of the impact, and that his (Avnet's) car was knocked 190 feet.

▮ Under such state of the record we sustain appellant Avnet's points 1, 2, and 5 to the extent that the findings on negligence and proximate cause on the part of Avnet were so against the great pre-

ponderance of the evidence as to require a new trial.

For the reasons stated, the judgment below is reversed and the cause is remanded for a new trial.

Reversed and remanded.